**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PABLO ALFONSO MOLINA ORTIZ, | Case No. 5:26-cv-02830-RAO |
| Petitioner, | |
| v. | **ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS** |
| WARDEN, *et al.*, | |
| Respondents. | |

## I.    <u>INTRODUCTION</u>

On May 26, 2026, Pablo Alfonso Molina Ortiz ("Petitioner"), represented by counsel, filed the instant verified petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against the Warden, Adelanto U.S. Immigration and Customs Enforcement ("ICE") Processing Center; Ernesto Santacruz, Field Office Director, ICE; Todd M. Lyons, Acting Director of ICE; Markwayne Mullin, Secretary of U.S. Department of Homeland Security; and Todd Blanche, Acting Attorney General of the United States. Dkt. No. 1 ("Pet.").

On May 29, 2026, the matter was assigned to the undersigned for final disposition. *See* Dkt. Nos. 4, 7.

///

Petitioner claims that his current detention at Adelanto ICE Processing Center in Adelanto, California violates the Fifth Amendment's Due Process Clause and the Administrative Procedures Act ("APA"). *See generally* Pet. Respondents oppose the Petition, arguing that Petitioner is subject to mandatory detention as well as contending that Petitioner's claims fail on the merits. *See generally* Dkt. No. 9 ("Response.").

Because Petitioner was re-detained without notice or an opportunity to be heard, the Court GRANTS IN PART the Petition and orders Respondents to provide Petitioner with a constitutionally adequate bond hearing.

## II.   BACKGROUND

### A.   Factual Background

Petitioner, a native and citizen of Colombia, entered the United States on December 24, 2022. Pet. ¶ 35. The government encountered and arrested Petitioner at or near El Paso, Texas. *Id*.; *see* Dkt. No. 9-1 at 3. The same date, Petitioner was released due to detention capacity issues and provided with a Form I-94 as an alternate to detention as a condition of parole. *Id*. On November 20, 2023, Petitioner filed an application for asylum and withholding of removal.[1] Pet. ¶ 36; Dkt. No. 9-1 at 3. On July 1, 2024, Petitioner filed another asylum application. Dkt. No. 9-1 at 3.

Petitioner has no criminal convictions. Pet. ¶ 38; Dkt. No. 9-1 at 3. In November 2025, Petitioner was arrested by Oakland Police Department on suspicion of vandalism and grand theft. *Id*. Based on this information, the Pacific Enforcement Response Center lodged an immigration detainer, Notice of Action Form I-247A, on November 3, 2025. Dkt. No. 9-1 at 3. On March 18, 2026, Petitioner voluntarily reported in person to the Los Angeles ICE Field Office, where he was taken into immigration custody and has remained since. Pet. ¶ 39.

---

[1] The Petition states that Petitioner filed his asylum application on December 20, 2023, however, the Form I-213 attached as an exhibit to Respondents' Response lists November 20, 2023. The Court uses the date listed on the official immigration form.

### B.      Procedural Background

Petitioner contends he was unlawfully re-detained after release on parole in violation of his Fifth Amendment due process rights and in violation of the APA. Pet. ¶¶ 41-61.  With respect to his claim of a procedural due process violation, the Petition sets out an analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976), demonstrating how Petitioner has satisfied each of the *Mathews* factors.  *Id*. ¶¶ 52–55.  Petitioner requests that the Court order his immediate release or, alternatively, a bond hearing.  *Id*. at 17.  Petitioner is currently detained by ICE at the Desert View Facility in Adelanto, California.  Pet. ¶ 13.[2]

On June 2, 2026, Respondents filed a Response to the Petition ("Response"). *See* Response.  Respondents argue that Petitioner's arrest for vandalism and theft subject him to mandatory detention under the Laken Riley Act, codified at 8 U.S.C. § 1226(c).  *Id*. at 1.  Further, Respondents assert that neither Petitioner's substantive nor procedural due process rights have been violated.  *Id*. at 1–3.  With respect to substantive due process, Respondents defend the government's authority to arrest and detain noncitizens in connection with removal proceedings.  *Id*. at 1–2.  With respect to procedural due process, Respondents state that Petitioner has failed to satisfy the *Mathews* factors.  *Id.* at 2–3.

Petitioner filed a Reply to Respondents' Response ("Reply") on June 8, 2026. Dkt. No. 10 ("Reply").  The Reply refutes the assertion that Petitioner's arrest for vandalism and grand theft satisfies the definition of being arrested for an enumerated offense under Section 1226(c).  Reply at 2.  Further, Petitioner argues that his re-detention violates both his substantive and procedural due process rights.  *Id*. at 5–7. With respect to his procedural due process rights, Petitioner contends that he has satisfied each of the *Mathews* factors.  *Id*. at 6–7.  Petitioner asks the Court either to

---

[2] The publicly available ICE records confirm that Petitioner is currently detained within this District.

release him from custody or order an immediate bond hearing at which the government bears the burden of demonstrating by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community. *Id*. at 7–8.

## III.   <u>LEGAL STANDARD</u>

A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The statute does not require a person to be physically imprisoned to be in custody; rather, habeas relief is available where the person is subject to "restraints not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

## IV.   <u>DISCUSSION</u>

### A.   **The Court has Jurisdiction**

Petitioner argues that this Court has jurisdiction over the present action based on 28 U.S.C. §§ 2241 and 1331. Pet. ¶ 2. Respondents do not contest this Court's jurisdiction over the Petition.

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address whether it has jurisdiction over Petitioner's claims. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Here, Petitioner seeks review of the legality of his detention. *See generally* Pet. Petitioner's due process claims challenge his re-detention, without any notice, any reasons given for the revocation, or any opportunity to argue why he should be permitted to remain at liberty. *See* Pet. ¶¶ 41–56. Accordingly, as other courts in this Circuit have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) (finding that the court would have jurisdiction under § 2241 to consider errors of law in immigration detention, including due process violations); *Hernandez v. Session*, 872 F.3d 976, 986 (9th Cir.

4

2017) (finding that the court had jurisdiction to hear constitutional claims about immigration detention under § 2241); *M.R. v. LaRose*, No. CV 25-3710 JLS (BLM), 2026 WL 40839, at *2 (S.D. Cal. Jan. 6, 2026) (similar); *Garcia v. Andrews*, No. CV 25-1884-TLN (SCR), 2025 WL 1927596, at *1 n. 1 (E.D. Cal. July 14, 2025) (similar); *see also Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (concluding that § 1252(g) does not impose a jurisdictional bar to petitioner's claims regarding constitutional violations).

In sum, the Court has jurisdiction.

**B.    Petitioner's Re-Detention Violates Procedural Due Process**

Petitioner argues his re-detention without a pre-detention hearing violates his procedural due process rights. *See* Pet. ¶¶ 49–56. For their side, Respondents contend that Petitioner fails to satisfy the *Mathews* factors because (1) Petitioner's mandatory detention and current length of detention (approximately 11 weeks) erode the private interest at issue; (2) the risk of an erroneous deprivation is not implicated yet because Petitioner may seek a bond hearing after a period of six months; and (3) the sovereign's prerogative in exercising control over immigration matters weighs heavily in favor of Respondents. Response at 2–3. Petitioner's reply redirects the Court to the *Mathews* analysis set forth in the Petition. Reply at 6–7; *see* Pet. ¶¶ 52–55. Further, the Reply assails the Response for inappropriately importing a *Zadvydas*-style[3] argument in its analysis of the first *Mathews* factor; and for presenting a generic argument regarding the second factor that fails to address Petitioner's individual circumstances. Reply at 7–8.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "It is well-established that the Fifth Amendment entitles aliens to due process of law in

---

[3] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

5

deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citation omitted). Due process protections includes noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent," and those subject to a final order of deportation. *Zadvydas*, 533 U.S. at 693–94. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Although the government may have discretion over the initial decision to detain or release a noncitizen, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that noncitizen may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, No. CV 22-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. CV 25-1884-TLN (SCR), 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). The Court analyzes each step in turn.

///

///

6

Here, Petitioner was released from Respondents' custody on December 24, 2022, with a Form I-94 "as an alternate to detention as a condition of parole."  Dkt. No. 9-1 at 3.  Since his parole into the United States, Petitioner applied for asylum.  *Id*.  Petitioner has a liberty interest in his continued freedom.  As has been detailed by this and numerous other courts, individuals released from ICE custody have a protected interest in remaining out of custody.  *See Lopez v. Lyons*, No. CV 25-3174-DJC (CKD), 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Noori v. LaRose*, No. CV 25-1824-GPC (MSB), 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year.  This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal.").  Although Respondents contend that the government lawfully revoked Petitioner's release because he has been charged with vandalism and grand theft, Petitioner retains his protected liberty interest.  *Singh v. Chestnut*, No. CV 26-546-DJC (AC), 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) ("Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." (citations omitted)).

Given Petitioner's protected liberty interest, the Court must determine what procedural protections are due to protect that liberty interest.  *See Mathews*, 424 U.S. at 335.  This requires balancing the three factors the Supreme Court set forth in *Mathews*.  Courts must consider:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id*.

With respect to the first factor, Petitioner has a substantial interest in remaining out of immigration custody. Petitioner gained a liberty interest in his continued freedom when he was initially released. Prior to his recent detention, Petitioner had been out of custody for over three years. Petitioner has a constitutionally protected liberty interest arising from his period of release. His re-detention denies him that freedom. *Carballo v. Andrews*, No. 25-978-KES (EPG), 2025 WL 2381464, at *7 (E.D. Cal. Aug. 15, 2025) (explaining that the "[p]etitioner has a constitutionally protected liberty interest arising from his years-long and successful period of release and integration into the community); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." (citation omitted)). The Court thus finds that Petitioner has a significant interest in his continued liberty, and accordingly, the first *Mathews* factor favors Petitioner.

With respect to the second factor, the risk of erroneous deprivation is significant because Petitioner has not been afforded an opportunity to contest his detention. *See* Pet. ¶¶ 46, 56; Reply at 8; *see also Diep v. Wofford*, No. CV 24-1238-SKO (HC), 2025 WL 604744, at *5 (E.D. Cal. Feb. 25, 2025) (concluding that the risk of an erroneous deprivation of Petitioner's protected liberty interest "is high" where "[h]e has not received any bond or custody redetermination hearing" (citing *Jimenez v. Wolf*, No. CV 19-7996 (NC), 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020)). Additionally, there is no evidence that Respondents employed any procedural safeguards before detaining petitioner and revoking his release. Indeed, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 25-107-KES (SKO), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (citation omitted); *Juarez Fernandez v.*

*Semaia*, No. CV 25-3412-SPG (MBK), 2026 WL 136229, at \*6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process").  Given the absence of any procedural safeguards to determine if Petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *A.E.*, 2025 WL 1424382, at \*5.  The additional procedure of a bond hearing would mitigate the risk of erroneous deprivation of Petitioner's liberty as it would require the government to establish that Petitioner presents a flight risk or danger to the community.  The second *Mathews* factor thus weighs in Petitioner's favor because the risk of erroneous deprivation of Petitioner's liberty is high.

With respect to the third factor, Respondents' interest in detaining Petitioner without notice, reasoning, and a hearing is low.  Respondents do not identify any fiscal or administrative burdens on the government that a hearing would entail.  District courts have observed that bond hearings impose minimal burden on the government.  *See Singh v. Barr*, 400 F. Supp. 3d 1005, 1021–22 (S.D. Cal. 2019); *Hilario M.R. v. Warden*, No. CV 24-998-EPG (HC), 2025 WL 1158841, at \*9 (E.D. Cal. Apr. 21, 2025)).  The Court acknowledges that the government has a strong interest in effecting removal.  *Demore v. Kim*, 538 U.S. 510, 531 (2003).  However, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing."  *Zagal-Alcaraz v. ICE Field Office Director*, No. CV 19-1358-SB, 2020 WL 1862254, at \*7 (D. Or. Mar. 25, 2020).  Providing a bond hearing would not undercut the government's interest in effecting removal, rather, the bond hearing will illuminate whether Petitioner represents a flight risk or danger to the community.  After all, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative

conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).[4] The third *Mathews* factor weighs in Petitioner's favor.

In light of the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in Petitioner's detention, Petitioner is entitled to more process than he received. *See Mathews*, 424 U.S. at 335.[5] On balance, the Court concludes that the *Mathews* factors weigh in favor of finding that Petitioner is entitled to a custody hearing before a neutral arbiter in which the government shall bear the burden of establishing that Petitioner poses a danger to the community or risk of flight. *See Carballo*, 2025 WL 2381464, at *8 (ordering the government to provide a post-deprivation bond hearing to § 1226(c) detainee where the government bears the burden of proof); *see also Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."). As noted, Petitioner requests that the Court order his immediate release and prohibit his re-detention without a pre-deprivation hearing at which Respondents bear the burden of proving that he is a flight risk or a danger to the community. But the Court finds that the specific harm Petitioner suffered—unlawful detention without a bond hearing—is remedied by ordering Respondents to provide Petitioner a bond hearing. *See S.E. v. Noem*, No. CV 26-356-DAD (SCR), 2026 WL 206085, at *4 n. 3 (E.D. Cal. Jan. 27, 2026) ("Based on the court's *Mathews* analysis, the court has determined that a post-deprivation bond hearing is the appropriate remedy at this stage of these proceedings."). Further, the Court orders Respondents to immediately release

---

[4] Although the government clearly has an interest in preventing a noncitizen from "remain[ing] in the United States in violation of our law," Respondents have not explained how these interests are supported by Petitioner's detention without any avenue for release on bond. *Demore*, 538 U.S. at 518 (quotations omitted).

[5] The Court declines to address Petitioner's other claims or whether Petitioner's detention is authorized by statute because the Petition can be resolved on procedural due process grounds.

Petitioner if a bond hearing is not provided within seven days of this Order. *See E.C. v. Noem*, No. CV 25-1789-RFB (BNW), 2025 WL 2916264, at *12 (D. Nev. Oct. 14, 2025) ("Given Petitioner's liberty interest is at stake, the Court finds that if a bond hearing is not provided promptly, within seven days of this Order, Petitioner's continued detention would violate his due process rights." (collecting cases)); *Diep*, 2025 WL 604744, at *5 (similar).

## V.   CONCLUSION

For the foregoing reasons, Petitioner's Petition for a writ of habeas corpus is **GRANTED IN PART**. IT IS HEREBY ORDERED THAT:

- Within seven (7) days of this Order, Respondents shall afford Petitioner a constitutionally adequate bond hearing before an immigration judge. The government shall bear the burden of establishing that Petitioner poses a danger to the community or risk of flight, and Petitioner shall be allowed to have counsel present;

- Respondents are ordered to immediately release Petitioner unless he is provided a constitutionally adequate bond hearing before an immigration judge within seven (7) days of this Order;

- Respondents are directed to file a status report within ten (10) days of this Order substantiating compliance with the Court's Order; and

- Within thirty (30) days of entry of final judgment in this action, the Court will consider an application from Petitioner for reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

IT IS SO ORDERED.

DATED: June 11, 2026

_____
/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

11